113   657
e135  572

GRAY *v*. CITY OF DETROIT.[1]

TAXES—CERTIFICATE OF TREASURER — WHEN BINDING UPON CITY.
   A city whose treasurer is authorized, but not required, to sell
   and transfer to any person who shall pay the tax or assess-
   ment, with costs and charges, all of the interest of the city
   in unredeemed land bid in by the city, does not lose its inter-
   est in land purchased at a tax sale, by an offer of a prospec-
   tive mortgagee of the land, on behalf of the owner, to pay to
   the treasurer all the taxes due thereon; nor is it affected by
   the omission of such sales from a statement by the treasurer
   purporting to show the entire amount of unpaid taxes, upon  ,
   which the mortgagee relied in making the loan.

Appeal from Wayne; Lillibridge, J.   Submitted June
16, 1897.   Decided July 13, 1897.

Bill by William J. Gray and Robert T. Gray, copart-
ners as Gray & Gray, and George L. Beecher and Luther
S. Trowbridge, administrators of the estate of Luther
Beecher, deceased, against the city of Detroit, to cancel
certain tax sales.   From a decree dismissing the bill on
demurrer, complainants appeal.   Affirmed.

*Gray & Gray*, for complainants.

*C. D. Joslyn*, for defendant.

HOOKER, J.   In 1895 William J. Gray and Robert T.
Gray were employed by the administrators of the estate
of Luther Beecher to examine the title to certain real
estate, upon which said administrators were about to, and
afterwards did, loan the sum of $20,000.   It was found
that this land had been sold for taxes, and bid in by the
city of Detroit.   An offer to pay or purchase these tax
bids was made to the clerk in the office of the city treas-

---

[1] Rehearing denied September 15, 1897.

urer by Mr. Harvey, to whom the loan was to be made, who was informed that they were too busy in the office to give the matter attention at that particular time. The inconvenience of delay was explained, and it was then proposed·by the person in charge of the office to make a statement showing the amount due on said tax sales or bids in the hands of the city. Such certificate was as follows:

"CITY TREASURER'S OFFICE.
"DETROIT, June 7, 1895.
"I hereby certify, according to the records of this office, that there are taxes to the amount of $1,367.40 unpaid to date.
"JOHN W. CORCORAN."

The matter was explained to the Grays by Harvey, and they, relying on this certificate, closed the transaction; retaining from the sum loaned a sufficient sum to pay the amount stated in the certificate, and the further sum of $289.66, to redeem from sale for taxes of 1894. It does not appear how Gray ascertained that this latter purchase was outstanding. The balance of the $20,000 was paid to Harvey. When the Grays went to redeem from the sales, it was found that there had been further sales, not included in the amount certified by the deputy treasurer. The mortgage was foreclosed, and a deficiency of $5,000 resulted, which cannot be collected from the mortgagors. This bill is filed to cancel the sales, and the amount involved is $975. The bill was demurred to upon two grounds: (1) That the complainants are not in privity with the acts of the treasurer; (2) that the city is not bound by the certificate of the treasurer.

The bill states that section 13, chap. 5, of the charter of Detroit, permits the common council to prescribe by ordinance or resolution "other duties" for the treasurer. Chapter 29 of the ordinances authorizes the treasurer to sell and transfer to any person who shall pay the tax or assessment, with costs and charges, all of the interest of the city to unredeemed land bid in by the city. It is further stated that by resolution dated April 2, 1866, the

treasurer was empowered to cancel sales, when owners request it, on presentation and surrender of the certificate of sale, properly assigned, and that it has been the custom of the treasurer's office to cancel the sales, in all such cases, of land sold to the city, where the city still held title under any tax sale, upon full payment. From these various provisions and practices, counsel deduce the conclusion that: "So long as the title is in the city, the sale is open to redemption. The sale is in fact only an embryonic sale, and under such circumstances the sale is no sale until the title passes," and therefore, so long as the city retains its purchase, it is subject to redemption, and a tender divests the legal effect of the sale. This theory must rest upon the provisions quoted, none of which *require* the treasurer to sell or transfer the interest of the city, or to cancel sales. He is given *authority* to do so, and it is said to have been the custom; but it is not alleged that the citizen who wishes to pay or buy can compel acceptance of the tax, costs, and charges, and a transfer or cancellation, nor do these provisions appear to require it. No official duty is created by the provisions as stated in the bill. This deputy treasurer was under no obligation to accept payment at the time it was offered by Harvey or his agent, and his attempt to accommodate Mr. Harvey was an unofficial act, for which the city is not responsible. In *Hand* v. *Auditor General*, 112 Mich. 597, we held that an owner, who seasonably sought to pay his tax, and was prevented by misinformation received from the county treasurer, who was in duty bound to communicate the truth, and upon whose statement the owner had a right to rely and act, would be protected against a sale growing out of the officer's default. The officer in that case was acting within the line of his bounden duty, and his act was that of the State. The State was bound accordingly, and a subsequent refusal to issue a deed upon discovery of the situation was sustained. We think the distinction is plain.

The decree of the circuit court is affirmed.

The other Justices concurred.